UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:20-cv-00062 |
| | ) | |
| GARY THOMAS PRICE; | ) | |
| GTP INVESTMENT PROPERTIES, | ) | |
| LLC; and ALBERTA LOWERY, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT ORDER

### I.    INTRODUCTION

This action was filed on September 29, 2020, by Plaintiff United States of America to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 ("Fair Housing Act" or "FHA").

In its complaint, the United States alleges that Defendant Gary Thomas Price ("Price") violated the FHA by discriminating against tenants on the basis of sex and race in the rental of dwellings in the City of Harrisonburg, Virginia, and surrounding areas in the Western District of Virginia ("Subject Properties"). [1] Specifically, the United States alleges that from at least 2000 through the fall of 2016, Price, in his capacity as managing agent of the Subject Properties, engaged in severe, pervasive, and unwelcome sexual harassment and retaliation against multiple female tenants. The United States also alleges that from at least 2008 through 2014, Price

---

[1]  A complete and current list of the Subject Properties, provided by the Defendants, is incorporated by reference herein and attached to this Consent Order as Appendix A.

engaged in discrimination on the basis of race by, among other things, using racial slurs with respect to tenants, prohibiting or attempting to prohibit tenants from entertaining African-American guests at their homes because of the guests' race, and articulating a policy of not renting to interracial couples.

Price's acts of sexual harassment included, but were not limited to:

- Making unwelcome sexual comments, advances and gestures to female tenants;

- Taking adverse housing actions, such as initiating eviction proceedings, increasing rent, and refusing to make repairs, against female tenants who rejected his sexual overtures;

- Conditioning or offering tangible housing benefits, including tenancy, reductions in rent, acceptance of late payments, repairs, and postponing or terminating eviction proceedings, on the provision of sexual favors, including, but not limited to, sexual intercourse and oral sex;

- Exposing his genitals to a female tenant, a prospective female tenant, and the female guest of a tenant;

- Inviting female tenants to view pornography with him;

- Entering the homes of female tenants without permission or notice, including late at night, for the purpose of making sexual overtures; and

- Surveilling female tenants for extended periods of time while they were inside their homes or in their yards when he had no legitimate reason for doing so.

Price's acts of prohibiting or attempting to prohibit tenants from entertaining African-American guests at the Subject Properties included, but were not limited to, informing tenants

that he did not allow African-American guests on properties he managed and threatening to harm an African-American guest if he (the guest) returned.

The United States alleges that the conduct described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA and a denial to a group of persons of rights granted by the FHA, which denial raises an issue of general public importance.

The United States further alleges that Defendant Alberta Lowery is vicariously liable for the discriminatory conduct of Defendant Price because she owned Subject Properties during the period relevant to this action, and that Defendant GTP Investment Properties, LLC (hereinafter, "GTP"), as the current owner and successor-in-interest to former owners of Subject Properties, is also liable for the discriminatory conduct of Defendant Price.

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

Defendants fully deny the allegations in the United States' Complaint. However, the Parties have agreed that, in order to avoid protracted and costly litigation, this action should be resolved without a trial and adjudication of the facts alleged by the United States. Therefore, the Parties consent to the entry of this Consent Order and Judgment ("Consent Order").

**ACCORDINGLY, it is hereby ADJUDGED, ORDERED, and DECREED:**

## II.    INJUNCTIVE RELIEF

### A. <u>Prohibition Against Discrimination and Retaliation Under the FHA</u>

1.    Defendants, their officers, agents, employees, transferees, successors, heirs and assigns, and all other persons or entities in active concert or participation with

them, are enjoined, with respect to the rental of dwellings,[2] from:

    a.   Refusing to rent or sell a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental or sale of a dwelling, or otherwise making unavailable or denying a dwelling to any person because of sex or race;

    b.   Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex or race;

    c.   Making any statement, oral or written, in connection with the rental or sale of a dwelling, that expresses or indicates any preference, limitation, or discrimination, or an intent to make any such preference, limitation, or discrimination, on the basis of sex or race; and

    d.   Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her or his having exercised or enjoyed, or on account of her or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act, including by retaliating against any person exercising her or his rights under this Order.

**B.  <u>Prohibition Against Management of Residential Rental Properties and Contact with Tenants</u>**

2.    Defendant Gary Price is permanently enjoined from entering the premises of any of the Subject Properties, including, but not limited to, the dwelling units (whether occupied or unoccupied), leasing offices, mobile home lots, communal spaces, yards, parking areas, garages,

---

[2] The term "dwellings" has the meaning set out in the Fair Housing Act, 42 U.S.C. §3602(b).

and any rental dwelling in which he has or acquires any direct or indirect ownership interest, financial interest, or control interest.

       3.      For as long as Defendants own, lease, manage, or control the Subject Properties or any residential rental properties, Property Management Responsibilities, as described in Paragraph 5, must be handled by an Independent Property Manager ("Independent Manager"). See Section III, below.

       4.      Defendants shall be permanently prohibited from purposefully or knowingly engaging in direct contact or communications with: (a) any former, current or prospective tenant of the Subject Properties or (b) any former, current, or prospective tenant of any residential rental property for which any Defendant has had any Property Management Responsibilities (as defined in Paragraph 5, below), including, but not limited to, any person identified as an aggrieved person in Appendix B, attached.  Defendants shall refrain from initiating any such contact or communication.  To the extent Defendants need to communicate with former, current, or prospective tenants, any such communication shall be made through the Independent Manager.[3]  In the period between the filing date and the retention of the Independent Manager, as described in Paragraph 6 below, any necessary communications with former, current, or prospective tenants shall be made by Defendant Lowery.  In the event that any Defendant inadvertently or unintentionally initiates any contact with any aggrieved person, or another person initiates such contact with any Defendant, such Defendant will immediately discontinue the contact or communication and take all reasonable steps to avoid any further contact or communication.

---

[3] Communications with aggrieved persons regarding legal matters unrelated to this action, if any, shall be made by counsel for Defendants, if appropriate.

5.      "Contact or communications," as referred to in Paragraph 4, above, includes, but is not limited to, physical contact, oral communications (either direct or by telephone), e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communications made through third parties.  "Property Management Responsibilities," as referred to herein, include showing or renting housing units; processing rental applications; selecting tenants or participating in the selection of tenants; performing or supervising repairs or maintenance; inspecting dwelling units; collecting rent and fees; entering rental units; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, personal contact with tenants or prospective tenants.

### III.      RETENTION OF AN INDEPENDENT PROPERTY MANAGER

6.      Within twenty-one (21) days of entry of this Order, Defendants will retain an Independent Manager, to be approved in writing by the United States, to perform all Property Management Responsibilities as described in Paragraph 5, above, at any residential rental property that Defendants own, lease, or control, including subsequently-acquired properties as set forth in Section IV ("current or future rental properties").  An "Independent Manager" is an individual or entity who is experienced in managing rental properties and has no current or past employment, financial, contractual, personal, or familial relationship with any Defendant in this action.

7.      If, after retaining an Independent Manager, Defendants wish to change the Independent Manager for any reason, they shall submit to the United States for written approval the name of the prospective new manager at least fifteen (15) days prior to retaining the individual or entity.

8.    Defendants shall, through the Independent Manager, do the following in relation to any current or future rental properties:

    a.  Implement, subject to the United States' approval, a written policy prohibiting housing discrimination, including sexual harassment and other forms of sex discrimination, as well as discrimination based on race, color, religion, national origin, familial status or disability.  The policy shall include a formal complaint procedure.  A copy of this policy and procedure shall be provided to counsel for the United States for the subject properties within thirty (30) days of entry of this Order, and for any residential rental properties that any Defendant later acquires as described in Section IV, within thirty (30) days of the purchase, lease, or assumption of control of any such property. This policy and procedure will be implemented within five (5) days of notification from the United States to Defendants that the policy and procedure are satisfactory to the United States.  At that time, Defendants will direct the Independent Manager to provide all current and future tenants with copies of the policy and procedure. Within fifteen (15) days of this directive, the Independent Manager shall certify in writing to the United States that the policy and procedure have been implemented and shall provide a list of all tenants who have been notified in accordance with this paragraph.

    b.  Ensure that the Independent Manager's employees or representatives who will be performing duties with respect to current or future rental properties are familiar with the requirements of the FHA, particularly as they pertain to

sexual harassment, other forms of sex discrimination, and race

discrimination (including through the training required by Section V), and

this Order.

c.  Post and continue to display an "Equal Housing Opportunity" sign in any

office or location at which the Independent Manager, or his or her

representatives, may conduct rental business pertaining to properties owned

by any of the Defendants and at which any current or prospective tenants

could be present, including at the entries to any mobile home parks subject

to this Order.  The signs shall be posted within fifteen (15) days of entry of

this Order and shall state that all dwellings are available for rent on a

nondiscriminatory basis. An 11-inch by 14-inch poster that comports with

24 C.F.R. Part 110 will satisfy the requirement for postings in offices and

other confined spaces.  At entries to mobile home parks, posters should be at

least 24-inches by 27-inches.  Defendants may use HUD Form 928,

available at:

https://portal.hud.gov/hudportal/documents/huddoc?id=928.1.pdf.  Such

posters shall be placed in prominent, well-lit locations where they are easily

readable.

d.  Require that all advertising conducted for any of the current or future

properties in newspapers, telephone directories, radio, television, Internet

websites, social media, or other media, and all billboards, signs (including at

the properties), pamphlets, brochures, and other promotional literature,

include either a fair housing logo, the words "equal housing opportunity

8

provider," and/or the following sentences: "We are an equal opportunity housing provider. We do not discriminate on the basis of race, color, national origin, religion, sex, familial status, or disability." The words or logo will be legible and prominently placed.

e.   Send to the United States within thirty (30) days of entry of this Order, and every six (6) months thereafter for the term of the Order, a list of all tenants at current or future properties and their addresses.

f.   Maintain all rental records kept in relation to rental of current and future rental properties and allow the United States to inspect and copy such records upon reasonable notice.

g.   Provide any information reasonably related to compliance with this Order that is requested by the United States.

## IV.   ACQUISITION OR TRANSFER OF INTEREST IN RESIDENTIAL RENTAL PROPERTIES

9.     If, between the time the parties sign this agreement and the expiration date of this Order entered by the Court, Defendants acquire a direct or indirect management, ownership, financial, or controlling interest in any other residential rental property, such property will be subject to the applicable provisions of this Order. Within thirty (30) days of acquiring such an interest, Defendants will notify counsel for the United States of the nature of their interest in the dwelling or property; the address of the property; the number of individual dwelling units at the property; and any other information required under this Order.  Defendants will further provide the United States with copies of official documents certifying the transfer in interest of the property.

10.     If, prior to the effective date or at any time during the effective period of this Order, Defendants sell or transfer a Subject Property, or any property covered by Paragraph 9, to a bona fide, third-party purchaser in an arms-length transaction, such property will cease to be subject to this Order.  For purposes of this Order, a "bona fide, independent third-party purchaser" is one with whom no Defendant in this action has any current or past financial, contractual, personal, or familial relationship. An "arms-length transaction" is one that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction. A corporation or entity for which any Defendant is an officer, partner, employee, or agent, or in which any Defendant has an ownership, financial or controlling interest, is not a "bona fide, independent third-party purchaser," and any transaction involving such a purchaser will not qualify as an "arms-length transaction."

11.     If, at any time during the effective period of this Order, Defendants claim that their obligations under this Order have been terminated or changed because they sold or transferred one or more residential rental properties to a bona fide, third-party purchaser in an arms-length transaction as defined in Paragraph 10, Defendants will inform the United States within thirty (30) days of such transaction and provide the date of the sale or transfer, copies of official documents certifying the sale or transfer, and contact information for the subsequent purchaser.

12.     If any transfer of interest in all or a portion of any residential rental property by Defendants is not an arms-length transaction as defined in Paragraph 10, Defendants will remain liable for any violation of this Order related in any way to that property.

## V.    EDUCATIONAL PROGRAM

13.    Within ninety (90) days of entry of this Order, Defendants and their employees and their agents, including the Independent Manager described in Paragraph 6, above, will attend training on this Consent Order and the Fair Housing Act, including but not limited to the Act's provisions related to sexual harassment, other forms of sex discrimination, and race discrimination, including discriminatory statements prohibited by the Act. The trainer or training entity must be qualified to perform such training, and must be unconnected to Defendants, their employees, agents, or counsel. The trainer and training agenda must be approved in advance by the United States. Defendants Price and Alberta Lowery, as well as current employees and agents, shall attend the initial, in-person training by the trainer or training entity, which shall be video-taped for viewing by future employees or agents involved in rental activities on behalf of the Defendants. Defendants will bear the cost of any expenses associated with this training. The attendees shall be provided a copy of this Order at the training. The deadline for the training required by this paragraph may be extended by mutual written agreement of the parties, as provided in Paragraph 58, below. In addition, in the event persistence of Corona Virus (COVID-19) renders in-person training unsafe for either trainers or attendees within the time prescribed, Defendants Price and Lowery, as well as current employees and agents covered by this paragraph, may view a video-taped recording of the training and receive an electronic copy of this Order. The certificates required by this paragraph may also be transmitted electronically. For the purpose of accommodating the safety of trainers and attendees, the agreement of the United States to a virtual form of the training, or an extension of time to comply with the training requirements of this Order, will not be unreasonably withheld.

11

14.    Defendants will obtain from the trainer or training entity a separate certificate of attendance signed by each individual who attended the training. The certificates shall include the name of the course, the date the course was taken, the subject matter covered in the course, and the length of the course and/or time within which the course was completed.

15.    All new agents or employees of Defendants, including the Independent Manager and his or her employees or agents who are involved in showing, renting, managing or maintaining any residential rental properties owned, managed or operated by Defendants, and all employees or agents who supervise such persons, shall, within thirty (30) days of commencing an employment or agency relationship with any of the Defendants or the Independent Manager, be provided the training or view a video recording of the training described in Paragraph 13, within thirty (30) days of commencing an employment or agency relationship with Defendants.

16.    Within ten (10) days of entry of this Consent Order, all employees and agents of Defendants who are involved in any way in the operation of Defendants' rental business shall be given a copy of this Order and shall be provided an opportunity to have any related questions answered.

17.    Within ten (10) days of the commencement date of any new employee or agent who becomes involved in any way in the operation of Defendants' rental business, she or he shall be given a copy of this Order and shall be provided an opportunity to have any related questions answered.

### VI.    REPORTING AND DOCUMENT RETENTION REQUIREMENTS

18**.**    Defendants shall provide to the United States notification and documentation of the following events:

a. Any change to Defendants' rules or practices regarding the written policy against sexual harassment or formal complaint procedure discussed in Paragraph 8.a, within five (5) days of the change;

b. Any change to the Independent Manager, in accordance with Paragraph 7;

c. Notice of the acquisition of a direct or indirect management, ownership, financial, or controlling interest in any dwelling for rent, subject to Paragraph 9, or transfer of any dwelling, subject to Paragraph 10;

d. Proof of completion of any training in accordance with Paragraphs 13 and 15, and certificates of attendance at the training described in Paragraph 14 and as reflected in Appendix C, within fifteen (15) days of such training;

e. Any information indicating that Defendants, or any of their agents or employees, may be in violation of this Consent Order within five (5) days of such knowledge; and

f. Any written or oral complaint against Defendants, or any of Defendants' agents or employees, regarding discrimination in housing within ten (10) days of receipt of such complaint by any Defendant or employee or agent of Defendants.  With respect to oral complaints, each Defendant, or agent or employee of a Defendant, to whom a complaint is made shall maintain a log in which they record the name of the complainant; the address, telephone number, and email address, if available, of the complainant; the date the complaint was received; the name of Defendants' employee or agent who received the complaint; the name of Defendants' employee or agent who is the subject of the complaint; the name of the property involved in the

complaint; and a general description of the complaint.  Defendants shall

provide this information to the United States within ten (10) days of receipt

of the complaint. If the complaint is written, Defendants shall provide a

copy of the written complaint to the United States along with the

complainant's name, address, telephone number, and email address, if

available, and the name of Defendants' employee or agent who received the

complaint, within ten (10) days of receipt.  Defendants shall inform the

United States within fifteen (15) days of the substance of any resolution of

such complaint.

g.    Proof of compliance with the requirements of Paragraphs 43, 44, and 45,

below, regarding the dismissal of pending eviction or unlawful detainer

actions brought by any of the Defendants against aggrieved persons

identified by the United States, the vacating of judgments obtained by

Defendants against any such aggrieved person, and the expungement of

records by credit agencies reflecting any such judgments.  Defendants will

provide copies of all documents related to the requirements of Paragraph 43

within thirty (30) days of entry of this Order.  Defendants will provide

documentary proof of compliance with the requirements of Paragraphs 44

and 45 within twenty (20) days of actions taken to expunge the records of

aggrieved persons, consistent with those paragraphs.

19.    Within ninety (90) days of entry of this Order, and every six (6) months thereafter

for the duration of this Order, Defendants shall deliver to counsel for the United States a report

containing information about their compliance efforts during the preceding reporting period, including but not limited to:

    a.   Certification that the policy against sexual harassment and other forms of discrimination as well as the formal complaint procedure described in Paragraph 8.a have been implemented, or, in reports subsequent to the initial report, that such policy remains in effect;

    b.  Photographs of each office or location in which rental activity is conducted showing the "Equal Housing Opportunity" signs in the locations at which they are posted, including the date on which the photograph was taken, in accordance with Paragraph 8.c;

    c.   A list of all residential rental properties in which Defendants have a direct or indirect management, ownership, financial, or controlling interest;

    d.  Copies of any advertisements published in local newspapers in accordance with Paragraph 8.d in the preceding six months;

    e.  Written and sworn verification by Defendants that during each reporting period as described in Paragraph 18, all property management responsibilities at the Subject Properties and any properties listed in response to Paragraph 18.c were performed by the Independent Manager or his or her designee, as required by Section III.; and

    f.   Copies of all documents reflecting Defendants' actions to comply with Paragraphs 43, 44, and 45, below.

Defendants shall submit a final report to the United States no later than sixty (60) days before the expiration of this Order.

20.     Defendants shall preserve all records that are the source of, contain, or relate in any way to their obligations under this Order. Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents.

## VII.    MONETARY DAMAGES AND OTHER RELIEF FOR AGGRIEVED PERSONS

### A.    Creation of Settlement Fund and Distributions to Aggrieved Persons

21.     Defendants agree to pay a total sum of **THREE HUNDRED THIRTY THOUSAND DOLLARS ($330,000)** into a settlement fund for the purpose of compensating those persons whom the United States has determined have been harmed by the Defendants' discriminatory housing practices (hereinafter, "aggrieved persons").  The payment of the $330,000 sum shall be made in installments as set forth below.

22.     Within thirty (30) days of entry of this Order, Defendants shall deposit in an interest-bearing escrow account ("Escrow Account") the initial sum of **TWO HUNDRED THOUSAND DOLLARS ($200,000).**  The Escrow Account shall be established for the sole purpose of compensating aggrieved persons identified by the United States.  Within five (5) business days of the establishment of the Escrow Account, the Defendants shall submit proof to the United States that the account has been established and the funds deposited.

23.     When establishing the Escrow Account, Defendants shall identify a third-party individual to serve as Administrator of the Escrow Account.  The Administrator shall have no current or past employment, personal, or familial relationship with any Defendant in this action, and must be approved in writing by the United States.  Defendants shall bear any costs associated with the Administrator.

16

24.    Defendants shall maintain the Escrow Account established pursuant to Paragraph 22, above, for the purpose of making the remaining damages payments to aggrieved persons, as provided in this paragraph.  Over the course of two (2) years following entry of this Order, Defendants shall deposit an additional **ONE HUNDRED THIRTY THOUSAND DOLLARS ($130,000)** into the Escrow Account as described in Paragraphs 26 and 27, below.

25.    Within ninety (90) days of the entry of this Order, the United States will provide Defendants with a list of aggrieved persons, including the individuals identified in Appendix B and any other aggrieved persons that the United States identifies after entry of this Order, along with the amounts to be paid to each from the initial $200,000 deposit required in Paragraph 22. Within ten (10) days of receipt of the list of aggrieved persons, the Administrator shall deliver to counsel for the United States, by overnight delivery, a check payable to each aggrieved person in the amount specified by the United States.[4]  Defendants shall ensure that the Administrator issues checks in accordance with this paragraph.

26.    Within ninety (90) days after entry of this Order, Defendants shall make a second deposit into the Escrow Account of not less than six thousand dollars ($6,000).  Beginning the first day of the following month, Defendants shall continue to make monthly deposits into the Escrow Account of at least six thousand ($6,000) by the first day of each month until a total amount of one hundred thirty thousand dollars ($130,000) has been deposited.

27.    Ninety (90) days after entry of this Order, and in ninety-day intervals thereafter, until the total $330,000 in compensatory damages is disbursed to aggrieved persons, Defendants

---

[4] All documents, instruments, and written materials required by this Consent Order to be sent to the United States shall be sent by commercial (not by United States Postal Service) overnight delivery service, addressed as follows:  Chief, Housing & Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M St. NE, 8th Floor, Washington, D.C. 20001, Attn:  DJ #175-80-78.

shall provide proof to the United States of their deposits into the Escrow Account for the prior

three months.

28.    Upon request by the United States, Defendants shall promptly provide an

accounting of the Escrow Account.

29.    When a total of one hundred thirty thousand dollars ($130,000) in installment

deposits has been deposited into the Escrow Account, the United States will provide Defendants

with a second list of aggrieved persons and the amount of damages that each aggrieved person

should receive.  Within ten (10) days of receipt of the United States' second list, the

Administrator shall deliver to counsel for the United States, by overnight delivery, a check

payable to each aggrieved person in the amount specified by the United States.  The Defendants

shall ensure that the Administrator issues checks in accordance with this paragraph.

30.    The United States reserves the right to request disbursement of funds from the

Escrow Account at eight- (8) and sixteen- (16) month intervals from entry of this Order,

consistent with the amounts required to be in the Account at those intervals.

31.    Should the United States request disbursement of funds from the Escrow Account

within eight (8) or sixteen (16) months from entry of this Order, it will provide Defendants with

a list of the names of aggrieved persons and the amounts to be paid to each at those intervals.

The Administrator will then deliver to the United States a check made out to each such aggrieved

person in the amount specified.

32.    Any interest accruing to the Escrow Account shall become a part of the Escrow

Account and shall be distributed to aggrieved persons on a pro rata basis.

33.    In no event shall the aggregate of all such checks issued from the Escrow Account

exceed the sum of the Escrow Account plus accrued interest.

34.    Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited into the Escrow Account.

35.    The Defendants agree that all disbursement determinations of the United States with respect to aggrieved persons shall be final, and Defendants hereby waive the right to contest the United States' determinations in this or any other proceeding.  Defendants hereby agree that they will not seek to interfere with or oppose the United States' determinations regarding the aggrieved persons or the appropriate amount of damages paid to each aggrieved person.

36.    When counsel for the United States has received a check from the Defendants payable to an aggrieved person, counsel for the United States shall deliver the check to the aggrieved person.  Before an aggrieved person's final check has been delivered to that individual, the United States will require the aggrieved person to sign and provide to counsel for the United States a release in the form of Appendix E.  The United States will provide a copy of the signed release to the Defendants.  No aggrieved person shall receive a final check until that individual has signed the release form and returned it to the United States.

37.    In the event that any of the checks sent to the United States is not cashed, deposited, or otherwise negotiated within six months of the date on which it was sent to the United States, Defendants agree to cancel any such check and issue one or more new checks as requested by the United States to distribute those funds to the appropriate aggrieved person or to the other aggrieved persons on a pro rata basis.

38.    The compensation required to be paid pursuant to Paragraph 21 is a debt within the meaning of 11 U.S.C. § 523(a)(6).  The Defendants shall not seek to discharge any part of this debt in bankruptcy.

**B.    Notice to Potential Aggrieved Persons**

39.     Defendants shall publish a Notice to Potential Victims of Housing Discrimination ("Notice") in the Daily News-Record, in the form of the Notice at Appendix D, informing readers of the settlement and the availability of monetary damages for aggrieved persons.  The Notice shall invite such persons to contact counsel for the United States within seventy (70) days from entry of this Order.   Defendants shall publish the Notice on at least four (4) separate occasions in the Daily News-Record, including at least two (2) separate occasions on a Saturday, in a space measuring at least one-fourth (1/4) of a page.  The first notice shall be published no later than fifteen (15) days after entry of this Order, and the last notice between forty-five (45) and sixty (60) days after entry of this Order.

40.      Defendants shall provide a copy of the newspapers containing each such Notice to counsel for the United States within five (5) days of publication of each Notice.

41.     Defendants shall promptly produce any rental/tenancy records, or any other records in their possession, custody, or control, that the United States believes may be useful in identifying persons who may be entitled to relief under this Order.  Upon reasonable notice, Defendants shall provide such rental/tenancy records or shall permit representatives of the United States to make copies of such rental/tenancy records.

42.     Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.  The United States will investigate the claims of any potential aggrieved persons.

**C.     Additional Relief for Aggrieved Persons**

43.     Within fifteen (15) days of entry of this Order, Defendants shall execute and cooperate fully in the filing of any and all motions, affidavits, petitions, notices of dismissal, or other documents with the appropriate courts that may be required to dismiss pending eviction,

unlawful detainer, or related actions brought by any of the Defendants against aggrieved persons listed in Appendix B, and to seek vacatur of any judgments obtained by Defendants against any such aggrieved person.  Defendants agree not to contest the United States' determination that the proceedings against such aggrieved persons violated their rights under the Fair Housing Act. Defendants will provide to the United States documentary proof of compliance with this paragraph within thirty (30) days of the entry of this Order.

44.     Within thirty-five (35) days of the entry of this Order, Defendants will take actions necessary to expunge from the credit histories of the aggrieved persons listed in Appendix B any detrimental information that they have reported to any of the three major credit bureaus.[5]  Defendants will provide to the United States copies of all documents related to the requirements of this paragraph, including credit bureau requests and court filings, within twenty (20) days of actions taken to expunge the credit records of aggrieved persons.

45.     Within fifteen (15) days of receiving the United States' full list of aggrieved persons referred to in Paragraph 25, Defendants will take the actions described in Paragraphs 43 and 44 with respect to any newly identified aggrieved persons.  Defendants will provide to the United States copies of all documents related to the requirements of this paragraph, including credit bureau requests and court filings, within twenty (20) days of actions taken to expunge the credit records of newly identified aggrieved persons.

46.     Defendants shall inform the United States within five (5) days after taking any of the actions described in Paragraphs 43, 44, and 45.

47.     Defendants shall maintain all records relating to the actions taken in accordance with Paragraphs 43, 44, and 45.

---

[5]  Those bureaus are Equifax, Experian, and TransUnion.

## VIII.   CIVIL PENALTY

48.    Within ten (10) days of entry of this Order, Defendants will pay **FIVE**

**THOUSAND DOLLARS ($5,000)** to the United States Treasury as a civil penalty under 42

U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment will be in the form of an

electronic funds transfer in accordance with written instructions to be provided by the United

States.

49.    In the event that Defendants, their agents or employees engage in any future

violation of the FHA, such violation(s) shall constitute a "subsequent violation" under 42 U.S.C.

§ 3614(d)(1)(C)(ii) and shall be subject to further penalties.

## IX.    RELIANCE ON FINANCIAL REPRESENTATIONS

50.    Defendants have provided information about their financial situation to counsel

for the United States in this case, as described in their "Financial Statement of Debtor" form

signed by Defendants on August 25, 2020 ("Disclosures").  The United States has relied on the

accuracy and completeness of the information described in the Disclosures in entering into this

agreement, particularly with respect to the payments set forth in Section VII, *supra*.  All

Defendants warrant that the financial information they provided in the Disclosures is thorough,

accurate, and complete.  Defendants warrant that they do not own or have an interest in any other

asset(s) – either non-liquid or liquid, including cash in an amount higher than ten thousand

dollars ($10,000) – that has not already been disclosed to counsel for the United States in this

case.  Defendants warrant that they have made no misrepresentations in, or in connection with,

the financial information provided to counsel for the United State in this case.

51.    If, prior to the expiration of the term of this Order, the United States learns of (i)

additional income or assets in which any of the Defendants had an interest at the time of signing

this Order that would change their collective estimated net worth by ten thousand dollars

($10,000) or more that was not disclosed to counsel for the United States, or (ii) a misrepresentation by Defendants in, or in connection with, the financial information provided to counsel for the United States that would change their estimated net worth by ten thousand dollars ($10,000) or more, the United States may move the Court to modify this Order to require Defendants to pay additional amounts to aggrieved persons up to a total amount of fifty thousand dollars ($50,000).

52.     As security for the one hundred thirty thousand dollar ($130,000) payment in compensatory damages required in Paragraph 24, together with the five thousand dollar ($5,000) civil penalty to be paid to the United States in accordance with Paragraph 48, Defendants agree that the United States shall file a lien against all real property owned by any of the Defendants ("the Properties").  After entry of the Consent Order, the United States will file an abstract of judgment with the Rockingham County Circuit Court Clerk's Office to reflect the United States' judgment lien consistent with 28 U.S.C. § 3201.  When Defendants have deposited the full amount of one hundred thirty thousand dollars ($130,000) into the Escrow Account, counsel for the United States has received all of the checks for aggrieved persons in accordance with Paragraphs 21-22 and 24 through 29, Defendants have paid five thousand dollars ($5,000) to the United States as a civil penalty, and the checks have been deposited, the United States shall release its lien on the Properties.

53.     The parties agree that this Consent Order will constitute entry of a civil judgment against Defendants in the amount of three hundred thirty-five thousand dollars ($335,000), the combined total of the three hundred thirty thousand dollars ($330,000) in compensatory damages to be paid to aggrieved persons pursuant to Paragraph 21, and the five-thousand-dollar ($5,000) civil penalty to be paid to the United States pursuant to Paragraph 48.

## X.    ENFORCEMENT OF CONSENT ORDER

54.    This Order is effective immediately upon its entry by the Court.

55.    The Court shall retain jurisdiction for the duration of this Order to enforce its terms, after which time the case shall be dismissed with prejudice. This Order shall be in effect for a period of five (5) years from the date of its entry. The United States may move the Court to extend the duration of the Order in the event of noncompliance with any of its terms, whether intentional or unintentional, or if it otherwise determines the interests of justice so require.

56.    The United States may review compliance with this Order at any time, including through conducting fair housing testing of Defendants and their properties. Defendants agree to cooperate with the United States in any review of compliance. Upon reasonable notice, Defendants will permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Order.

57.    The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event the United States contends that there has been a failure by Defendants to comply with any provision of this Order, or if the interests of justice so require, the United States may move this Court to impose any remedy authorized by law or equity.   Such remedies may include, but are not limited to, the issuance of an order requiring performance of such act or deeming such act to have been performed, and an award of damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

## XI.  TIME FOR PERFORMANCE AND MODIFICATIONS TO ORDER

58.     Any time limits for performance imposed by this Order may be extended by mutual written agreement of the parties. Any other modifications to the provisions of this Order must be approved by the Court.  Any party may move the Court to extend the term of this Consent Order for good cause.

## XII.  COSTS OF LITIGATION

59.     Except as otherwise provided in Paragraph 57, the United States and Defendants will bear their own costs and attorneys' fees associated with this litigation.

## XII.     TERMINATION OF LITIGATION HOLD

60.     The Parties agree that, as of the entry of this Order, litigation is not "reasonably foreseeable" concerning the matters described in this Order. To the extent that any party has previously implemented a litigation hold to preserve documents, electronically-stored information ("ESI"), or things related to the matters described above, that party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves any party of any other obligations under this Order, including, inter alia, Defendants' obligations to preserve documents under Paragraphs 18, 19, 20, 25, 26, 31, 43, 44, 45, and 47.

Entered: October 2, 2020.


*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge

FOR THE UNITED STATES OF AMERICA:

Dated: September 29, 2020

DANIEL P. BUBAR                          ERIC S. DREIBAND
Acting United States Attorney            Assistant Attorney General
Western District of Virginia             Civil Rights Division

*/s/ Krista Consiglio Frith*____          */s/ Nancy F. Langworthy*_
KRISTA CONSIGLIO FRITH                   SAMEENA SHINA MAJEED
Virginia Bar No.: 89088                  Chief
Assistant United States Attorney         CATHERINE A. BENDOR
Western District of Virginia             Deputy Chief
P.O. Box 1709                            NANCY F. LANGWORTHY (#377947 DC)
Roanoke, VA 24008-1709                   Trial Attorney
Phone: (540) 857-2250                    Housing and Civil Enforcement Section
E-mail: krista.frith@usa.doj.gov         Civil Rights Division
                                         U.S. Department of Justice
                                         950 Pennsylvania Avenue, NW – 4CON
                                         Washington, DC 20002
                                         Phone: (202) 532-5543; (202) 616-8925
                                         Fax: (202) 514-1116
                                         E-mail: nancy.langworthy@usdoj.gov

                                         Attorneys for Plaintiff
                                         United States of America

FOR DEFENDANT:

Dated: _September 25_____, 2020


GARY THOMAS PRICE


ALBERTA LOWERY


GTP INVESTMENT PROPERTIES, LLC
(by  Gary T. Price)


SHERWIN JOHN JACOBS
Virginia Bar No.: 012635
P.O. Box 10
Linville, Virginia 22834
Attorney for Defendant Gary Thomas Price
Phone: (540) 564-1138
E-mail: sjjacobs-attorney-510market@msn.com


/s/ J. Lloyd Snook, III
_____
J. LLOYD SNOOK, III, VA Bar No. 19230
Snook & Haughey, P.C.
P. O. Box 2486
408 East Market Street, Suite 107
Charlottesville, VA  22902
Phone: 434-293-8185
Fax: 434-295-0698
Email:  jlsnook@snookandhaughey.com

## APPENDIX A

## LIST OF SUBJECT PROPERTIES

4794 Guinea Lane, Harrisonburg, VA 22802;

4873 Guinea Lane, Harrisonburg, VA 22802;

4865 Guinea Lane, Harrisonburg, VA 22801;

4939 Guinea Lane, Harrisonburg, VA 22802;

4949 Guinea Lane, Harrisonburg, VA 22802;

1612 Pine Tree Lane, Harrisonburg, VA 22802;

6788 Rawley Pike, Hinton, VA 22831;

1091 Shirttail Alley, Harrisonburg, VA 22802

**APPENDIX B**

**LIST OF AGGRIEVED PERSONS**

Brandy J. Dimick;

Sherrie L. Warner;

Rebecca R. Nesselrodt;

Amanda P. Hansen Hensley;

Bettina Simmons;

Melanie R. Eye;

Betty D. Haskins;

Tiffany K. Dimick

**APPENDIX C**

**CERTIFICATION OF TRAINING AND RECEIPT OF CONSENT DECREE**

_____  I attended [an in-person training] [watched a video of training] on the federal Fair

Housing Act, which included training on the Act's provisions related to sex discrimination,

including sexual harassment, and race discrimination, including discriminatory statements and

actions prohibited by the Act.  I have had all of my questions concerning these topics answered

to my satisfaction.

_____  I have also received a copy of the Consent Order entered in United States v. Gary

Thomas Price, et al., Civil Action No. 5:20-cv-00062, filed in the United States District Court for

the Western District of Virginia, Harrisonburg Division.  I have read and understand the Consent

Order and had an opportunity to have my questions about the Order answered.  I understand my

legal responsibilities under the Consent Order and will comply with those responsibilities.  I

further understand that the Court may impose sanctions on the Defendants in the underlying

lawsuit if I violate any provision of the Order.


Name of the course:  _____

Date the course was taken:  _____

Length of the course (time within which the course was completed):  _____

      Date:  _____

      Employee/Agent Name (Print name and sign):  _____


      Employee/ Agent Signature:  _____

30

**APPENDIX D**

**NOTICE TO POTENTIAL VICTIMS OF SEXUAL HARASSMENT AND RACE
DISCRIMINATION BY GARY THOMAS PRICE**

On September 29, 2020, the parties to the *United States v. Gary T. Price, et al*, in the United States District Court for the Western District of Virginia, entered a Consent Order resolving a housing discrimination lawsuit brought by the United States against Gary Thomas Price, Alberta Lowery, and GTP Investment Properties, LLC.  The lawsuit alleged that Gary Thomas Price violated the Fair Housing Act by engaging in a pattern or practice of discrimination based on sex and/or race, including sexually harassing female tenants and articulating a policy of prohibiting interracial couples and African-American guests at rental properties in and around Harrisonburg, Virginia.

Under the Consent Order, a Settlement Fund has been established to compensate persons who have been subjected to unlawful discrimination by Gary Price.  You may be eligible to recover from this Settlement Fund if you were a tenant at a property managed by Gary Price and experienced unwelcome sexual comments, gestures, or propositions from him, or if you were subjected or exposed to discrimination based on race by Gary Price.

*If you believe you or someone you know has been sexually harassed or otherwise discriminated
against because of sex or because of race in connection with
a residential property managed by Gary T. Price, please contact the United States Department of
Justice at:*
**1-833-591-0291.**
**After selecting English or Spanish, please enter 22 to leave a phone message in the
voicemailbox related to U.S. v. Gary Price, GTP Properties, and Alberta Lowery.**

**Press 1 to continue in English, select mailbox 2, and select option 2 to leave a message in the
designated Price mailbox; or Press 2 to continue in Spanish and select mailbox 3 to leave a
message.**

*You may also write to:*
***United States Department of Justice***
***Civil Rights Division***
***Housing and Civil Enforcement Section***
***950 Pennsylvania Ave. N.W. – 4CON Square***
***Washington, DC 20530***
***Attn: DJ# 175-80-78***

**You must call or write on or before [no more than 70 days after the effective date of the
Consent Order] and your message or letter must include your name, address, and, if
possible, at least TWO telephone numbers where you may be reached.**

31

**APPENDIX E**

**FULL AND FINAL RELEASE OF CLAIMS**

     In consideration for the parties' agreement to the terms of the Consent Decree entered into in the case of *United States v. Gary Thomas Price,, et al.,*Case No. 5:20-cv-00062  (W.D. Va.) in the United States District Court for the Western District of Virginia, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge the Defendants named in this lawsuit, as well as their insurers, attorneys, agents, employees, former employees, heirs, and executors from any and all fair housing claims based on the facts alleged in this lawsuit in the Complaint in this lawsuit that I may have had against the Defendants for any of their actions or statements related to those claims through the date of the entry of the Consent Decree.

     Executed this _____ day of _____, 202_.


_____
Signature


_____
Print Name


_____
Home Address


_____
Home Address Continued

32